UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES A. WHITEHILL,

                Plaintiff,

    v.                                       **DECISION AND ORDER**
                                                 11-CV-501S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

      1.      Plaintiff, James A. Whitehill, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act").  Whitehill alleges that he has been disabled since January of 2007 due to mental impairments including learning disability, post traumatic stress disorder, and depression, and that these impairments render him unable to work.  He therefore asserts that he is entitled to disability insurance benefits under the Act.

      2.      Whitehill filed an application for disability insurance benefits under Titles II and XVI of the Act on July 27, 2007, alleging an inability to work since January 31, 2007 due to depression, tailbone cyst, and GERD.  Whitehill's initial application was denied.  In addition, agency records indicated that Whitehill did not have sufficient quarters of coverage for disability insurance benefits. He requested an administrative hearing, which was held on November 9, 2009 before ALJ Timothy M. McGuan.  Whitehill was represented by counsel and testified.  The ALJ considered Whitehill's claim, *de novo*, as one for supplemental security income benefits, and, on November 20, 2009, issued a decision denying the application for benefits.  Whitehill filed a request for review with the

Appeals Council, but the Council denied his request on June 1, 2011. Whitehill then filed the current civil action on June 16, 2011, challenging Defendant's final decision.[1]

3.  On November 14, 2011, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Whitehill followed suit by filing his own motion for judgment on the pleadings on November 30, 2011. The Commissioner filed a response/reply on December 14, 2011, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Whitehill's motion is denied.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1] The ALJ's November 9, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.      This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Whitehill engaged in substantial gainful activity from February 2008 through April 2008 (R. 16);[2] (2) Whitehill has three severe impairments: "learning disability ("LD"), post traumatic stress disorder ("PTSD") and an adjustment disorder with depressed mood (id.); (3) Whitehill does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id. 16-17); (4) Whitehill retained the residual functional capacity ("RFC") to perform work at all exertional levels, with the non-exertional limitations of: can occasionally understand, remember and carry out complex and detailed tasks, and occasionally interact with the public (id. 17-20); and (5) considering Whitehill's age,

---

[2]Citations to the underlying administrative record are designated as "R."

education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff can perform (id. 21).  Ultimately, the ALJ concluded that Whitehill was not under a disability as defined by the Act from July 27, 2007 through November 20, 2009, the date of the ALJ's decision. (R. 24.)

       10.    Whitehill raises two challenges here. First, he argues that the Appeals Council failed to consider and make a part of the record new medical evidence submitted after the ALJ's decision.  And second, Whitehill asserts that the ALJ's RFC assessment did not consider the impact of his mental impairment on all functional limitations.

       11.    In support of his first argument, Whitehill states that, on April 4, 2011, he submitted to the Appeals Council records from Spectrum Human Services and Mercy Hospital which contain, respectively, additional mental health diagnoses and treatment notes regarding his physical injuries.  (Docket No. 13-1 at 9, 11.)  He argues that the Appeals Council failed to make this evidence part of the record, and failed to consider the evidence, such that remand is required.  (id. at 9, 11-12.)

       12.    If a claimant submits to the Appeals Council new and material evidence that relates to a period before the ALJ's decision, "the Appeals Council 'shall evaluate the entire record including the new material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996) (quoting 20 C.F.R. § 404.970(b)).

       13.    The Appeals Council stated, in its June 1, 2011 notice, that "we considered

. . . the additional evidence listed on the enclosed Order of Appeals Council.[3] We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 1-2.) Thus, on its face, the record clearly contradicts Whitehill's argument that the Appeals Council neither accepted nor considered the additional evidence.

14. Whitehill next takes issue with ALJ McGuan's RFC determination. He first contends that the ALJ improperly failed to perform a function by function analysis at the fourth step of the sequential evaluation, and then compounded that error in the fifth step by failing to provide the vocational expert with complete hypothetical questions.

15. "The Commissioner defines RFC as a claimant's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 8 hours a day, for 5 days a week, or [on] an equivalent work schedule.'" Sorensen v. Comm'r of Soc. Sec., No. 3:06 Civ. 554, 2010 WL 60321, at *8 (N.D.N.Y. Jan. 7, 2010) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)[4] ). In assessing a claimant's RFC, the ALJ "must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 3714184, at *2. The ALJ must consider all the relevant evidence in the record, including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis. See generally 20 C.F.R. § 404.1545. Here, Whitehill faults the ALJ for failing to state specific conclusions as to his ability to use judgment in the workplace and to deal with changes in a work setting, both of which SSR 96-8p states are "generally

---

[3] The Order lists the following exhibits, made part of the record: Exhibit 12E "Brief dated April 4, 2011 from the claimant's representative . . .;" Exhibit 15F "Treatment records dated January 23, 2009 through January 22, 2010 from Mercy Hospital and Catholic Health System;" and Exhibit 16F "Treatment records dated June 9, 2010 through December 17, 2010 from Spectrum Human Services.

[4] Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, 1996 SSR LEXIS 5.

required by competitive, remunerative work." (Docket No. 13-1 at 12.) Defendant contends the RFC determination was supported by substantial evidence and required no further detail. (Docket No. 14 at 6-8.)

16. ALJ McGuan determined that Plaintiff was capable of performing a full range of work at all exertional levels, but that such work was compromised by his non-exertional limitations; specifically, his ability to only occasionally understand, remember, and carry out complex and detailed tasks, and only occasionally interact with the public. (R. at 17.) In reaching this determination, the ALJ examined Whitehill's scholastic and medical records[5], and arranged for intelligence testing and mental and medical consultative examinations, the results of which he summarized in the determination. Dr. Ryan, the consultative psychiatric examiner, diagnosed Whitehill with an adjustment disorder with depressed mood, described his affect and impairments, and concluded that Whitehill could: (a) follow and understand simple directions and instructions to perform simple tasks, (b) maintain attention and concentration, (c) maintain a regular schedule, (d) learn new tasks slowly, and (e) generally relate with others. He went on to note that Whitehill may have difficulty with complex tasks due to poor decision-making skills, and have difficulty with stress. (Id. at 18,192-95.) Similarly, Dr. Tzetzo, a review physician, described Whitehill as mildly impaired in the performance of daily living activities and moderately impaired in his ability to function socially and maintain concentration, persistence or pace. (Id. at 19.) Based on the record evidence, Dr. Tzetzo concluded Whitehill was able to understand and follow work directions in a work setting with low public contact, maintain attention for such work

---

[5] Whitehill suggests that his treating source might have provided further limitations, but provides no basis from which to conclude that the ALJ did not have a complete record from treating sources before him. Although the Appeals Council did accept his additional submissions from Spectrum Human Services, those treatment records all post-date the ALJ's decision by at least six months.

tasks, relate adequately to a work supervisor for such work tasks, and use judgement to make work related decisions in a work setting with low public contact. (Id. at 220.) Whitehill's psychotherapy records include a Brief Psychiatric Rating Scale, dated July 10, 2009, which rated the severity of all measures of his psychiatric condition as "mild," "very mild," or "not present." (Id. at 339-40.) The ALJ noted that no treating or examining physician had indicated the existence of limitations greater than those listed in the RFC determination. In short, the ALJ considered and essentially adopted the function by function analyses provided by Drs. Ryan and Tzetzo regarding Whitehill's mental ability to work. These analysis are, respectively, supported by and based on substantial record evidence, and the Court finds the ALJ's reliance on them proper. Hill v. Astrue, No. 5:11-CV-00026, 2012 WL 2178925, at *4, 8 (N.D.N.Y. June 13, 2012) (ALJ did not err in relying on function by function analysis of non-examining medical reviewer, rather than making own analysis); Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at * (S.D.N.Y. July 25, 2008) (where ALJ considers all of claimant's limitations, describes how the evidence supports the determination, and discusses claimant's ability to maintain sustained work activity, ALJ need not provide own narrative discussion for each function).

17.   Whitehill goes on to argue that the ALJ erred at step five of the evaluative process by presenting an incomplete hypothetical to the vocational expert and then relying on the answer to that question. (Docket No. 13-1 at 12-13.) Defendant contends the hypothetical fully incorporated the ALJ's RFC determination, which is supported by substantial evidence. (Docket No. 14 at 9.)

18.   At the fifth and final step of the sequential analysis, the ALJ may rely on a vocational expert's testimony regarding the existence of jobs the claimant can perform in the national economy. Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004). There must

be "substantial record evidence to support the [hypothetical] upon which the vocational expert based his opinion," Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983), and a "hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony," Dickson v. Astrue, No. 1:06-CV-511, 2008 WL 4287389, at *15 (N.D.N.Y. Spet. 17, 2008) (citations omitted).

19.     In this case, the ALJ properly sought the testimony of a vocational expert after determining that Whitehill suffered from non-exertional limitations.  His hypothetical accurately reflected his RFC assessment of Whitehill and was consistent with the findings of Drs. Ryan and Tzetzo.  Because the ALJ's hypothetical covered the full extent of Whitehill's limitations, the hypothetical provided a sound basis for the vocational expert's testimony.  There is another point worth noting here.  Whitehill's attorney had an opportunity to present hypotheticals as well, but did not present the issues he now claims should have been included.  Instead, he posed hypotheticals for limitations and symptoms that are entirely without support in the medical record—to wit, can only occasionally perform within a schedule or maintain regular attendance, and occasionally suffers from psychotic systems that cause a full interruption in work.  (R. at 42-44.)

20.     Accordingly, for the reasons stated above and having found that ALJ McGuan's RFC determination and finding of "not disabled" were supported by substantial evidence, Whitehill's motion for judgment on the pleadings is denied and the Commissioner's motion is granted.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

9

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: June 30, 2012
       Buffalo, New York

                                                      s/William M. Skretny
                                                      WILLIAM M. SKRETNY
                                                            Chief Judge
                                          United States District Court